THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIA GUADALUPE DIAZ TOSCANO, individually and as class representative,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXANDRA LOZANO KENNEDY, an individual; LA LUZ DEL CAMINO LEGAL, PLLC, f/k/a ALEXANDRA LOZANO IMMIGRATION LAW PLLC, a Washington professional limited liability company; EN SOLIDARIDAD, LLC, a Washington limited liability company; SALUD TOTAL, LLC, a Wyoming limited liability company; AMIGA LAWYERS LLC, a Washington limited liability company; ALLY LOZANO, LLC, a Washington limited liability company.,<br><br>Defendants. | Case No. 2:26-cv-02088-RSM<br><br>PLAINTIFF'S EMERGENCY MOTION UNDER FED. R. CIV. P. 23(d) AND FOR TEMPORARY RESTRAINING ORDER REGARDING DEFENDANTS' COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS<br><br>NOTE ON MOTION CALENDAR: NOVEMBER 2, 2026 (LCR 65(b)(2)) |

## I. RELIEF REQUESTED

Plaintiff moves on an emergency basis under Fed. R. Civ. P. 23(d) and, in the alternative, Fed. R. Civ. P. 65(b) and LCR 65(b), for an order (1) prohibiting Defendants, pending further order,



**MENDEZ LAW GROUP, PLLC**
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

from sending putative class members any letter, check, or other payment conditioned on a release of claims or on exclusion from the class; (2) declaring that any release or class exclusion purportedly accepted by cashing a check sent with Defendants' letter has no effect pending further order; (3) requiring Defendants, within three business days, to identify every recipient and to produce the client report they agreed to produce in response to Request for Production No. 25; (4) requiring preservation of all related records; and (5) setting a schedule for a Court-approved corrective notice. Plaintiff does not ask the Court to stop any refund. The problem is the condition attached to the payment, not the payment itself.

## II. INTRODUCTION

While this putative class action is pending, Defendant La Luz del Camino Legal, PLLC (the "Firm") has begun sending its former clients, who are members of the proposed class, a check and a bilingual letter. The letter states that cashing the check releases "any and all claims, demands, actions, and causes of action of any kind," known or unknown, against Ms. Lozano, the Firm, and its employees and contractors, and that the recipient "will not be allowed to participate as a member of any class that is certified" in this case. Declaration of Teresita Herrera ("Herrera Decl.") Anexo B. The recipient is not asked to sign anything. Acceptance occurs by cashing the check. Ms. Herrera's check, for $2,000, is less than what she paid the Firm. Herrera Decl. ¶ 4.

Defendants have confirmed that the mailing was planned for approximately 1,600 former clients, that 296 letters and checks have already been sent, and that at least two recipients have already cashed their checks. Declaration of Damian S. Mendez ("Mendez Decl.") ¶¶ 5, 7 & Ex. 6. Defendants have agreed to hold further mailings only through November 4, 2026, have



MENDEZ LAW GROUP, PLLC
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

stated that mailings may resume as early as November 5, and have declined to commit to holding until the Court rules. *Id.* ¶ 7 & Ex. 6. They refuse to identify the recipients. *Id.* And they are doing this with the very client list they have refused to produce to Plaintiff, while telling this Court that the Firm lacked the staff to produce it on a deadline. Emergency relief is warranted.

## III. FACTS

**The action and the proposed class.** Plaintiff filed this action on June 15, 2026. Dkt. 1. The operative complaint asserts claims under RICO, 18 U.S.C. §§ 1962(c)–(d), for breach of fiduciary duty, and under the Washington Consumer Protection Act, RCW 19.86, on behalf of a proposed nationwide class of persons who retained the Firm and paid fees for humanitarian immigration matters, and a Washington subclass. Dkt. 24 ¶ 6.2 & Counts I–IV. RICO provides for treble damages, 18 U.S.C. § 1964(c), and the CPA permits an award of up to three times actual damages, subject to a statutory cap, RCW 19.86.090.

**The letter.** The letter is on Firm letterhead, in Spanish and English. Herrera Decl. Anexo B. It offers a "refund" in the amount of the enclosed check "in connection with your having previously contracted with the law firm." In exchange, the recipient, "the sufficiency of which you acknowledge," agrees "unconditionally and forever to release and discharge Alexandra Lozano, Alexandra Lozano Immigration Law, and/or La Luz del Camino Legal, as well as any employees or contractors of the law firm, from any and all claims, demands, actions, and causes of action of any kind," including claims "known or unknown, suspected or unsuspected, fixed or contingent." *Id.* In bold, it states: "Please note that under this agreement, if you accept the refund, you will not be allowed to participate as a member of any class that



**MENDEZ LAW GROUP, PLLC**
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

is certified in the matter of *Maria Guadalupe Diaz Toscano v. Alexandra Lozano Kennedy, et al.*, No. 2:26-cv-02088." *Id.* It concludes: "Please be advised that cashing the enclosed check constitutes your acceptance of the above terms." *Id.*

**Ms. Herrera.** Ms. Herrera, who lives in Chicago, Illinois, is a former client of the Firm. Herrera Decl. ¶ 1. On October 27, 2026, she received an email from the payment platform Ramp stating that the Firm had sent her a payment of $2,000.00 by check, with a payment date of October 27, 2026 and an estimated arrival date of November 3, 2026. *Id.* ¶ 2 & Anexo A. The email included the letter. *Id.* ¶ 3 & Anexo B. The $2,000 is less than what she paid the Firm. *Id.* ¶ 4.

**The mailing campaign.** On October 29, 2026, defense counsel told Plaintiff's counsel that the mailing was planned for approximately 1,600 former clients; that 296 had been sent; that, as counsel understood it, the recipients were selected because work was done on their cases but their applications were not submitted to USCIS before the Firm closed; that every recipient received the same letter, by Ramp email and by mail with the check; that the Firm sets the amount of each payment under a refund policy, the details of which counsel did not know; and that the funds come from the Firm. Mendez Decl. ¶ 5. Counsel agreed that the letter does not tell recipients the reason they were selected. *Id.* Counsel declined to identify the recipients. *Id.* ¶¶ 5, 7 & Ex. 6.

**Defendants withheld the client list from Plaintiff while using it to contact the class.** Plaintiff served her first requests for production on August 4, 2026. Mendez Decl. ¶ 10. Request for Production No. 25 asked for documents identifying each person who retained the Firm during the relevant period. *Id.* & Ex. 4. On September 3, 2026, the Firm agreed that,



MENDEZ LAW GROUP, PLLC
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

"only after entry of an appropriate protective order," it would produce a report listing each client's name, date retained, office location, and immigration benefit sought. *Id.* The Stipulated Protective Order was entered on October 1, 2026. Dkt. 28. The report has never been produced. Mendez Decl. ¶ 11. On November 2, after Plaintiff advised that she would file this motion, Defendants stated that they will produce it by November 3. *Id.* ¶ 9 & Ex. 8. The only production in this case is Ms. Diaz Toscano's own client file. *Id.*; Dkt. 33 ¶ 2. Plaintiff was forced to move to compel. Dkt. 30. On October 19, 2026, Defendants opposed any deadline for production, telling the Court that "the Firm no longer operates and has very few employees," that it "is still in the process of identifying and collecting documents," and that "[s]etting an arbitrary deadline two weeks from entry of any order is unwarranted and impractical under these circumstances." Dkt. 32 at 2; *see* Dkt. 33 ¶ 3. Eight days later, on October 27, 2026, the Firm issued payments through Ramp to former clients at their current addresses, each accompanied by a letter seeking a release and an exclusion from the class. Herrera Decl. ¶¶ 2–3 & Anexos A–B. On October 30, 2026, defense counsel confirmed in writing that "the firm has very few, if any, employees at this time." Mendez Decl. ¶ 7 & Ex. 6. The Firm that told this Court it lacked the staff to produce a client list on a deadline had the list, the current addresses, and the funds to select approximately 1,600 former clients and mail them checks.

**Conferral.** On October 28, 2026, Plaintiff's counsel wrote to defense counsel, attached the letter, and asked Defendants to suspend the mailings and payments, identify every recipient, produce every version of the letter, identify who drafted it and the source of the funds, preserve all records, and produce the RFP No. 25 client report. Mendez Decl. ¶ 4 & Ex. 3. Counsel



MENDEZ LAW GROUP, PLLC
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

conferred by telephone on October 29, 2026, and Plaintiff's counsel summarized the call in writing the same day. *Id.* ¶¶ 5–6 & Ex. 5. At Defendants' request, Plaintiff's counsel sent proposed revisions to the letter and the mailing process on October 30, 2026. *Id.* ¶ 8 & Ex. 7. Among other things, Plaintiff proposed that refunds be paid without any release, that the letter explain why the client is being paid and how the amount was calculated, that it describe this action neutrally and advise the client to consult independent counsel, and that Defendants not treat the cashing of any check already sent as a release. *Id.* Ex. 7. Defendants responded that the letter "is not misleading," that they "did not agree that anything had to be done with respect to the 296 checks already issued," that they "will not produce a list of the persons which have been issued refunds," and that they "cannot agree at this time to wait indefinitely before our client resumes sending checks." *Id.* ¶ 7 & Ex. 6. Plaintiff asked Defendants to confirm by 12:00 p.m. on November 2, 2026 that no further letters, checks, or Ramp notices would be sent until the Court rules or enters an order approving an agreement. *Id.* ¶ 8 & Ex. 7. On November 2, 2026, at 11:18 a.m., defense counsel responded that Defendants were "not in position to respond" by noon, would provide "a formal response" the next day, and would not issue further refund checks or notices "before November 5, 2026." *Id.* ¶ 9 & Ex. 8. Defendants did not confirm that they would hold further mailings until the Court rules, and did not address the checks already issued. *Id.* Defense counsel also stated that Defendants will produce a spreadsheet consistent with their response to RFP No. 25 by November 3, 2026. *Id.*

**IV. CERTIFICATION OF NOTICE UNDER LCR 65(b)(1)**

Plaintiff served this motion, the supporting declarations and exhibits, and the proposed order on Defendants' counsel by email before or at the time of filing. *See* Certificate of Service.



**MENDEZ LAW GROUP, PLLC**
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

Defendants' counsel are Angelo J. Calfo, Peter D. Hawkes, Harold Malkin, Tyler S. Weaver, and Kyle B. Dugan, Angeli & Calfo LLC, 701 Pike Street, Suite 1625, Seattle, WA 98101, (206) 703-4810, angelo@angelicalfo.com, peter@angelicalfo.com, harold@angelicalfo.com, tylerw@angelicalfo.com, kyle@angelicalfo.com.

**V. ARGUMENT**

**A. The Court has authority to regulate communications with putative class members that threaten the class process.**

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Rule 23(d) authorizes orders that, among other things, require "giving appropriate notice to some or all class members" "to protect class members and fairly conduct the action," and that "deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1)(B), (E). An order limiting communications must rest on "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," and should be "carefully drawn" to limit speech "as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil*, 452 U.S. at 101–02.

Courts within this Circuit have applied that authority where a defendant, before certification, sent putative class members payments or letters seeking releases without adequately explaining the case and the claims. *See County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, 2010 U.S. Dist. LEXIS 78312, at *15–16,* 20–23 (N.D. Cal. July 8, 2010) (defendant mailed putative class members refund checks with a letter stating



MENDEZ LAW GROUP, PLLC
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

that accepting them constituted an accord and satisfaction and a release; holding the release invalid because the letter did not describe the claims, the status of the case, or plaintiffs' counsel's contact information); *Slavkov v. Fast Water Heater Partners I, LP*, No. 14-cv-04324-JST, 2015 WL 6674575, 2015 U.S. Dist. LEXIS 149013, at *19–20 (N.D. Cal. Nov. 2, 2015) (invalidating releases obtained through misleading settlement letters to putative class members and ordering a curative notice to all recipients);* O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, 2014 U.S. Dist. LEXIS 61066, at* 13–14 (N.D. Cal. May 1, 2014) ("The Court has authority to regulate communications which jeopardize the fairness of the litigation . . . .").

**B. The record shows communications that are misleading and that interfere with the class process.**

The record here is specific and documentary: the letter itself, the payment notice that accompanied it, and Defendants' own description of the mailing. Herrera Decl. Anexos A–B; Mendez Decl. ¶¶ 5, 7 & Ex. 6. The letter is improper for seven reasons.

**1. Acceptance by cashing a check is not informed consent.** The recipient is not asked to sign, initial, or return anything. She is not given time to consider the offer or told she may take time. The release takes effect the moment she cashes a check that arrives in her mailbox as a "refund." A former client who deposits a check described as a refund has no reason to understand that she has just released every claim she has and removed herself from this case. At least two recipients have already done so. Mendez Decl. ¶ 7 & Ex. 6.

**2. The letter does not explain what is being given up.** The letter does not describe the claims asserted in this action, the relief sought, or the potential value of the claims, including treble



**MENDEZ LAW GROUP, PLLC**
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

damages under RICO and enhanced damages under the CPA. 18 U.S.C. § 1964(c); RCW 19.86.090. Yet the letter has the recipient "acknowledge" the "sufficiency" of the payment.

**3. The letter does not explain why the recipient is being paid or how the amount was calculated.** Defendants say the recipients were selected because their cases were never submitted to USCIS, and that the amounts were set under a refund policy defense counsel could not describe. Mendez Decl. ¶ 5; *see id.* Ex. 6 ("we do not know if the amount of each check is the same"). The letter says none of this. *See* Herrera Decl. Anexo B. It does not tell the recipient what she paid, what work was done, what was not done, or how the check was calculated. Ms. Herrera's check is less than what she paid. Herrera Decl. ¶ 4. A client cannot judge whether a payment is fair, or whether she is compromising anything, without that information.

**4. The refunds are owed; the release is not.** By Defendants' own account, these recipients are former clients whose cases were not completed. A lawyer "may require advance payment of a fee, but is obliged to return any unearned portion." RPC 1.5 cmt. [4] (citing RPC 1.16(d)). Even a flat fee remains subject to the reasonableness requirement, RPC 1.5 cmt. [10], and a flat-fee agreement must tell the client she may be entitled to a refund if the agreed services are not completed, RPC 1.5(f)(2)(v). To the extent these payments return unearned fees, the Firm owes them regardless of any release. Conditioning the return of a client's own unearned fees on a release of all claims and an exclusion from this case uses the client's own money as the price of her claims, and the letter does not tell her so.

**5. The recipients are unrepresented former clients of the firm being sued.** The letter goes from a law firm to its own former clients, about claims arising from that firm's representation



**MENDEZ LAW GROUP, PLLC**
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

of them. A lawyer owes former clients fiduciary duties that do not end with the representation, and "a breach of ethical duties may result in denial or disgorgement of fees." *Eriks v. Denver*, 118 Wn.2d 451, 462, 824 P.2d 1207 (1992); *see also Arden v. Forsberg & Umlauf, P.S.*, 189 Wn.2d 315, 330, 402 P.3d 245 (2017) (*Eriks* "supports the rule that an attorney cannot retain fees paid by a client where the attorney has violated the duty of loyalty and where, in essence, the client does not receive the benefit from the representation"). The letter names Plaintiff's counsel as "the attorney who has brought that lawsuit," but it never advises the recipient, in writing or otherwise, that she should seek the advice of independent counsel before deciding. Washington's Rules of Professional Conduct prohibit a lawyer from settling a claim or potential claim for the lawyer's liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking, and is given a reasonable opportunity to seek, the advice of independent legal counsel. RPC 1.8(h)(2). Plaintiff cites the rules not as a basis for civil liability, but because they reflect the minimum fairness the law expects when a law firm seeks a release from its own former client. This letter provides none of it.

**6. The recipients are particularly vulnerable to confusion.** The Firm's clients are Spanish-speaking immigrants who retained the Firm for humanitarian immigration relief. Dkt. 24 ¶¶ 2.1, 6.2. A letter from the firm that handled their cases, enclosing money and invoking a federal lawsuit, invites acceptance without scrutiny.

**7. The problem is the condition, not the payment.** If the Firm owes its former clients refunds, it may pay them without a release and without class-exclusion language. A court in this Circuit faced nearly the same tactic in *County of Santa Clara*, where a defendant mailed



**MENDEZ LAW GROUP, PLLC**
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

refund checks to putative class members with a letter stating that accepting them released their claims. The court held that the defendant "had no First Amendment right to extract a release," that "the putative class must have been given the necessary information to choose whether to accept the settlement checks," and that the recipients were "entitled to cash the checks and receive back their money . . . without prejudice to seeking even greater" recovery. 2010 U.S. Dist. LEXIS 78312, at *16,* 20, *22. Defendants' choice to tie the payment to a release and an opt-out from this case, and to make acceptance automatic, shows that the purpose is to reduce the class, not to refund clients.

**C. Defendants are using the client list they withheld from Plaintiff to shrink the class.**

Defendants' conduct cannot be reconciled with what they told this Court. For nearly three months, Defendants have withheld the client report they agreed to produce under RFP No. 25. They withheld it after the Protective Order removed the only condition they placed on it, through Plaintiff's motion to compel, and through their opposition to that motion, in which they cited the Firm's closure and lack of staff as reasons the Court should not set any production deadline. Dkt. 32 at 2. During that same period, the Firm identified approximately 1,600 former clients by the status of their cases, calculated an individual payment for each, located their current mailing and email addresses, arranged funding, and sent checks and releases through a commercial payment platform. Mendez Decl. ¶ 5; Herrera Decl. ¶¶ 2–3 & Anexos A–B. Defendants now say the Firm has "very few, if any, employees," yet they refuse to identify even the people to whom the letters were sent. Mendez Decl. ¶ 7 & Ex. 6.

The list was never too burdensome to produce. Defendants chose to use it themselves first, to obtain releases and class exclusions from the very people Plaintiff seeks to represent, before



MENDEZ LAW GROUP, PLLC
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

Plaintiff could identify or contact them and before the Court could rule on either the motion to compel or class certification. Defendants' discovery position and their mailing campaign are two halves of the same strategy: keep the class list from Plaintiff and the Court while using it to dismantle the class. That is the kind of abuse that Rule 23(d) and *Gulf Oil* authorize the Court to stop. It also confirms why the Court should order Defendants to identify every recipient now, and to produce the client report Defendants agreed to produce two months ago.

**D. Plaintiff offered a narrow alternative, and Defendants refused it.**

Before filing, Plaintiff proposed, at Defendants' request, specific language and procedures that would have allowed the refunds to go forward. Mendez Decl. ¶ 8 & Ex. 7. Plaintiff did not ask Defendants to stop paying refunds. Plaintiff asked that the refunds be paid without a release, that the letter explain the payment and the lawsuit, and that the cashing of the checks already sent not be treated as a release. *Id.* Defendants responded that "nothing misleading was communicated," that nothing need be done about the 296 checks already issued, that they will not identify the recipients, and that they will not commit to holding further mailings beyond November 4. *Id.* ¶ 7 & Ex. 6. Defendants' refusal of even the least burdensome protections confirms that Court intervention is necessary.

**E. The requested relief is narrowly drawn.**

The proposed order does not stop refunds, does not bar Defendants from communicating with former clients about matters unrelated to the claims in this action, and does not adjudicate the enforceability of any release. It (1) suspends only communications and payments conditioned on a release or class exclusion; (2) preserves the status quo by providing that any release or exclusion accepted by cashing a check has no effect pending further order, so that recipients



MENDEZ LAW GROUP, PLLC
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

may still receive and keep their money; (3) requires Defendants to identify the recipients and produce the RFP No. 25 client report, information Defendants already possess, have already agreed to produce, and are already using; (4) requires preservation; and (5) sets a schedule for a corrective notice, in Spanish and English, whose content the Court will approve. That is the "carefully drawn" order *Gulf Oil* requires. 452 U.S. at 102.

**F. In the alternative, the requirements for a temporary restraining order are met.**

The standard for a temporary restraining order is substantially identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In this Circuit, "serious questions going to the merits" and a balance of hardships tipping sharply toward the plaintiff can support relief if the other two elements are met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

**Likelihood of success.** For the reasons above, Plaintiff is likely to establish that the letter is misleading and interferes with the class process, which is the showing relevant to this motion.

**Irreparable harm.** Checks are arriving and being cashed now. Herrera Decl. ¶ 2 & Anexo A; Mendez Decl. ¶ 7 & Ex. 6. Approximately 1,300 more were planned, and Defendants have said mailings may resume as early as November 5. Mendez Decl. ¶¶ 5, 7 & Ex. 6. Each check cashed before the Court acts may release a class member's claims and remove her from the class without her understanding. Recipients are dispersed nationwide, many may not be



**MENDEZ LAW GROUP, PLLC**
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

reachable later, and money once spent cannot practically be returned as a condition of undoing a release. Without interim relief, the composition of the class will be changed by a defendant's unilateral action before the Court decides certification.

**Balance of hardships.** The proposed order costs Defendants nothing they are entitled to: they may continue to pay refunds, and they need only stop conditioning those payments on releases and class exclusions pending further order. Class members, by contrast, stand to lose their claims.

**Public interest.** The public interest favors the fair conduct of class litigation and the protection of unrepresented immigrant consumers from uninformed waivers of their rights.

**G. No bond, or a nominal bond, should be required.**

Rule 65(c) "invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks omitted). The proposed order does not stop any payment and imposes no cost on Defendants beyond producing information they already possess. No bond, or a nominal bond, is appropriate.

**VI. CONCLUSION**

Plaintiff respectfully requests that the Court enter the proposed order.

DATED this 2nd day of November, 2026.

MENDEZ LAW GROUP, PLLC

/s/ Damian S. Mendez
Damian S. Mendez, WSBA #36157

RIOS IMMIGRATION DEFENSE, P.S.



**MENDEZ LAW GROUP, PLLC**
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax

/s/ Manuel Rios
Manuel Rios, WSBA #27279
Attorneys for Plaintiff

I certify that this memorandum contains 4,038 words, in compliance with LCR 65(b)(2).

**CERTIFICATE OF SERVICE**

I certify that on November 2, 2026, before or at the time of filing, I served the foregoing motion, the Declarations of Damian S. Mendez and Teresita Herrera with their exhibits, and the proposed order by email on Defendants' counsel of record: Angelo J. Calfo (angelo@angelicalfo.com), Peter D. Hawkes (peter@angelicalfo.com), Harold Malkin (harold@angelicalfo.com), Tyler S. Weaver (tylerw@angelicalfo.com), and Kyle B. Dugan (kyle@angelicalfo.com), Angeli & Calfo LLC, 701 Pike Street, Suite 1625, Seattle, WA 98101, and that I filed them through the Court's CM/ECF system.

MENDEZ LAW GROUP, PLLC

/s/ Damian S. Mendez
Damian S. Mendez, WSBA #36157



**MENDEZ LAW GROUP, PLLC**
3317 36th Avenue South, Unit B
Seattle, Washington 98144
206-290-5148 Telephone
206-260-9010 Fax